UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
IRVING BROWN,                                                 :    **MEMORANDUM**
                                        Plaintiff,            :    **DECISION AND ORDER**
                                                              :
                      - against -                             :    09 Civ. 0234 (BMC)(LB)
                                                              :
NEW YORK STATE SUPREME COURT                                  :
FOR THE SECOND JUDICIAL DISTRICT;                             :
ASTORIA FEDERAL SAVINGS & LOAN                                :
ASSOCIATION,                                                  :
                                                              :
                                        Defendants.           :
                                                              :
------------------------------------------------------------- X

**COGAN**, District Judge.

This diversity case, arising from a brief delay in redeeming a certificate of deposit, is before the Court on defendant's motion to dismiss. The motion is denied for the reasons set forth below.

## BACKGROUND

The original incarnation of this case was in the Supreme Court, Kings County. It is a straightforward breach of contact case: plaintiff *pro se*, a Canadian citizen residing in the United Kingdom, alleges that defendant Astoria Federal Savings and Loan Association ("Astoria") delayed in turning over the proceeds of his certificate of deposit ("CD") for two weeks beyond its maturity date, and as a result, he incurred certain damages. These damages are itemized in the complaint together in most instances with a claimed amount. The itemized damages total about £1600. The others are listed as "to be determined by the jury at trial." For the most part, these unquantified damages arise from plaintiff's attempt to draw on the CD funds, which he assumed

had been deposited in his London bank as he allegedly requested when in fact they had not. They thus consist of the "cost of time, trouble and expense relating to Plaintiff's attempt to have the matter sorted out with his London bankers" and the change in his London bank's policy whereby, allegedly as a result of this incident, it will no longer allow plaintiff to draw on deposited foreign checks until they have cleared. In addition, plaintiff seeks damages for the discomfort he and his family incurred in living in their house through a cold London winter because he could not fund a contract for insulation, and for not being able to drive his car because he could not pay for insurance.

Astoria claimed it never received notice of his request to redeem the CD. Nevertheless, when plaintiff called to complain that he had not received his money, Astoria, without admitting liability, not only gave it to him, but credited him for some bounced check fees that he had incurred to Astoria and his London bank. Plaintiff still claims his other damages as described above.

The Supreme Court dismissed the case under N.Y. C.P.L.R. 3126[1] (the counterpart of Fed. R. Civ. P. 37) because plaintiff ignored his discovery obligations. Brown v. Astoria Federal Savings, No. 28177-2005, 2007 WL 5958108 (N.Y. Sup. Ct. March 28, 2007), aff'd, 51 A.D.961, 858 N.Y.S.2d 793 (2d Dep't), leave to app. den., 11 N.Y.3d 703, 864 N.Y.S.2d 807 (2008) (table). In affirming, the Appellate Division ruled:

---

[1] N.Y. C.P.L.R. §3126 (McKinney 2009), provides:

> If any party ... refuses to obey an order for disclosure or wilfully fails to disclose information which the court finds ought to have been disclosed pursuant to this article, the court may make such orders with regard to the failure or refusal as are just, among them ... an order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or any part thereof, or rendering a judgment by default against the disobedient party.

> Although dismissing a complaint pursuant to CPLR 3126(3) is a drastic remedy, it is warranted when a party's conduct is shown to be willful and contumacious. The willful and contumacious nature of the conduct of the plaintiff, a pro se litigant, can be inferred from his refusal to submit to an oral deposition and to attend a preliminary conference, and from his failure to respond to certain discovery demands, coupled with inadequate explanations for the failures to comply ... .

51 A.D.3d at 962, 858 N.Y.S.2d at 794 (internal citations omitted).

Unhappy with the result in the state courts, plaintiff recommenced the identical action here.[2] Astoria has moved to dismiss on the ground that plaintiff's claim is barred by both the Rooker-Feldman doctrine and collateral estoppel. It also contends that there is less than $75,000 in controversy so that subject matter jurisdiction is lacking.[3]

## DISCUSSION

### I. Standard of Review

Astoria's invocation of Rooker-Feldman and its assertion that the amount in controversy is below $75,000 challenge this Court's subject matter jurisdiction. The existence of subject matter jurisdiction is "a threshold inquiry, and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." See Morrison v. Nat'l Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation and citation omitted). To resolve a motion to dismiss for lack of subject matter jurisdiction, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." See Raila v. United States, 355 F.3d

---

[2] In the instant case, plaintiff added a claim against the Supreme Court, alleging that it violated his constitutional rights by requiring *pro se* litigants to buy index numbers with a bank check instead of a personal check. This Court has previously dismissed that claim on 11th Amendment grounds.

[3] Plaintiff complains bitterly that defendant has engaged in delaying tactics by requesting a premotion conference. This Court's Individual Practice Rules, located on the court's website, require a request for a premotion conference, so defendant did only what it was required to do. In any event, upon receiving defendant's request for a premotion conference, the Court waived the conference and deemed defendant's letter to constitute its motion. Thus, there has certainly been no delay.

3

118, 119 (2d Cir. 2004). Still, the plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. See Morrison, 547 F.3d at 170. A court may but does not have to consider evidence outside the pleadings on a 12(b)(1) motion to dismiss. Id.

## II. Rooker-Feldman

The Rooker-Feldman doctrine prohibits the lower federal courts from reviewing final judgments of state courts. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482-83, 103 S.Ct. 1303 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 414-16, 44 S.Ct. 149 (1923). One of the requirements for the application of Rooker-Feldman is that a plaintiff "must invite[e] district court review and rejection of [that state court] judgment [ ]." Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005). The rationale of the rule is that only the United States Supreme Court may review decisions of the state courts. Id.

The Second Circuit has recently reemphasized that the doctrine has limited reach. In Morrison v. City of New York, ___ F.3d ___, 2010 WL 59267 (2d Cir. 2010), the plaintiff brought a civil rights action challenging her 14 day confinement in a mental health facility. Although the Family Court had ordered her confinement, the order provided that she should be held for two weeks "*in the event she was reasonably found to be dangerous to herself or to others.*" Id. at 3 (emphasis in original). She contended that she was challenging the reasonableness of the finding that she was dangerous, not the court order requiring that determination. The defendant, in contrast, pointed to another provision of the order, which provided for "Court Release [of the plaintiff] Only," to argue that she was, in fact, challenging the court order. The Second Circuit found the plaintiff's interpretation more reasonable, and held Rooker-Feldman inapplicable. The case thus stands for the proposition that if a plaintiff's

4

claim can reasonably be read as not challenging a state court judgment, Rooker-Feldman is not implicated.

That proposition easily applies here. Plaintiff is not asking me to review the state court's dismissal of his action and determine whether the state court properly dismissed it for discovery abuse. He concedes that it did. Notably, plaintiff at that point – even after the Court of Appeals denied him leave to appeal – was free to recommence his action in state court because a dismissal under CPLR 3126 is not a judgment on the merits unless the judgment so provides (and the judgment against plaintiff did not). See Maitland v. Trojan Electric & Machine Co., Inc., 65 N.Y.2d 614, 491 N.Y.S.2d 147 (1985); Rosen v. Levy, 19 Misc.3d 1101(A), 859 N.Y.S.2d 898 (Sup. Ct. 2008) (table). Cf. Doyle v. American Home Products Corp., 583 F.3d 167 (2d Cir. 2009) (implying that, other than being barred by the statute of limitations, there is no bar to recommencing action after dismissal for neglect to prosecute); Andrea v. Arnone, Hedin, Casker, Kennedy and Drake, Architects and Landscape Architects, P.C., 5 N.Y.3d 514, 806 N.Y.S.2d 453 (2005) (same).[4] Such a renewed action, whether it had been commenced in state court or, as it was, here, does not challenge the merits of the original state court judgment.

The state court judgment did not alter or determine either party's rights against the other. It is thus not that judgment about which plaintiff is complaining. He is complaining about the

---

[4] It seems to be an intentional anomaly of state law that a dismissal under CPLR 3126 is without prejudice unless otherwise ordered. As the Official Commentary to the statute notes, in most cases, usually personal injury cases, the statute of limitations will have expired by the time a CPLR 3126 dismissal enters, so that the dismissal in effect will be with prejudice even if it does not so provide. See CPLR 3126 (Official Commentary C3126:8). However, in the "rare situation," id., where the statute of limitations has not expired, the only consequence of the dismissal is that the plaintiff must commence the action anew. As the Commentary further notes, since CPLR 3126 provides for either dismissal or preclusion, preclusion in a case where the statute of limitations has not run may often be a far more severe sanction. Id. (This is the opposite of federal law. See Fed. R. Civ. P. 41(b).)

For this reason, when the Appellate Division commented that its affirmance of the dismissal here constituted a "drastic remedy," that was a bit of an overstatement. The only burden on plaintiff was to buy another index number and start over. It is an unfortunate irony that plaintiff, as a *pro se* litigant, was not aware that instead of appealing the CPLR 3126 dismissal all the way up to the Court of Appeals and spending two years doing it, he could simply have refiled the action in state court.

5

bank's action in (allegedly) not paying over the proceeds of his CD on time. Since the state court never determined that issue, plaintiff is not challenging its judgment, and thus Rooker-Feldman has no application.

## III. Collateral Estoppel

For similar reasons, collateral estoppel has no application. That doctrine requires a determination on the merits. See Evans v. Ottimou, 469 F.3d 278, 282-84 (2d Cir. 2006) (issue must have been "necessarily decided" by the state court for it to render judgment); Sullivan v. Gagnier, 225 F.3d 161, 166 (2d Cir. 2000) ("The doctrine of collateral estoppel requires a detailed examination of the record in the prior state criminal case, including the pleadings, the evidence submitted and the jury instructions, in order to determine what issues were actually litigated and necessary to support a final judgment on the merits"). Here, the state court judgment does not reflect any determination of the merits.[5]

Moreover, because a state court would not apply collateral estoppel to prevent plaintiff from recommencing the action in state court, for the reason noted above, this Court cannot either. The Full Faith and Credit Act, 28 U.S.C. §1738, requires this Court to give the same effect to a state court judgment as would another New York state court: "judicial proceedings [of any state] ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State... ." See Burka v. New York City Transit Authority, 32 F.3d 654, 657 (2d Cir. 1994); Lowy v. Carter, No. 93 civ. 1392, 1993 WL 525121, *3 (S.D.N.Y. Dec. 13, 1993). There is thus no collateral estoppel arising from the state court's judgment.

---

[5] To the extent defendant meant to invoke *res judicata* instead of collateral estoppel, that doctrine is equally inapplicable for the same reason – dismissal under CPLR 3126 is not a decision on the merits. See Channer v. Dep't of Homeland Security, 527 F.3d 275, 279 (2d Cir. 2008).

6

## IV. Amount in Controversy

In A.F.A. Tours, Inc. v. Whitchurch, 937 F.2d 82, 87 (2d Cir. 1991), the Second Circuit confirmed the long standing rule that "unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear *to a legal certainty* that the claim is really for less than the jurisdictional amount to justify a dismissal." (quoting St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938)) (emphasis in AFA Tours). In making such a determination, "the Court may not resolve the merits of factual issues raised by defenses asserted, which a defendant claims will reduce plaintiff's claim below the requisite jurisdictional amount." Reddy v. Barclay's Bank of New York, NA, 773 F. Supp. 655, 657 (S.D.N.Y. 1991) (citing Zacharia v. Harbor Island Spa, Inc., 684 F.2d 199, 202 (2d Cir. 1982)). Moreover, "even where the allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted." Reddy, 773 F. Supp. at 657 (citations omitted).

Of course, a plaintiff may not rely upon a claim for damages that cannot be legally awarded under state law in order to meet the threshold amount. See Schwartz v. Victory Container Corp., 294 F. Supp. 866, 867 (S.D.N.Y. 1969). But the test remains severe, allowing a finding that the amount in controversy falls below the threshold only in three situations: "1) when the terms of a contract limit the plaintiff's possible recovery; 2) when a specific rule of substantive law or measure of damages limits the money recoverable by the plaintiff; and 3) when independent facts show that the amount of damages was claimed by the plaintiff merely to obtain federal court jurisdiction." Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction 3d § 3702.

The £1600 that plaintiff has itemized is obviously insufficient to meet the $75,000 threshold. The question is whether his unquantified items are precluded by any rule of substantive law. At least one of them is – plaintiff's claim for damages arising from his family's discomfort in living in a cold house constitutes damages for pain and suffering, not recoverable in this contract action. See e.g., Trikas v. Universal Card Services Corp., 351 F. Supp. 2d 37 (E.D.N.Y. 2005) (citing, Egan v. New York Care Plus Ins. Co. Inc., 277 A.D.2d 652, 716 N.Y.S.2d 430, 432 (3d Dep't 2000); Dana v. Oak Park Marina, Inc., 230 A.D.2d 204, 660 N.Y.S.2d 906, 911-12 (4th Dep't 1997)); 24 Williston on Contracts § 64:7 (4th ed. 2009) ("Mental suffering caused by a breach of contract, although it may be a real injury, is not generally considered as a basis for compensation in contractual actions.").

As to his other damages, it seems highly remote that plaintiff's difficulty in dealing with his London bank and not being able to drive for two weeks can result in a damage award of about $72,000 in damages (adding on the £1600 to reach $75,000). Nevertheless, the test is not one of probability. More importantly, although there may be a rule of law that prevents plaintiff from recovering anything beyond the amount of the CD on the facts that plaintiff has alleged, defendant has pointed out no such rule. Indeed, defendant has offered no reason at all why plaintiff cannot meet the threshold amount, except to say that it has paid plaintiff's bounced check fees. That is a non-sequitur, as plaintiff is claiming damages in excess of those fees.

This leaves the case in the same place as Reddy. There, a bank that had wrongfully refused to honor checks totaling $29,890. It argued that it could only be exposed to damages in that amount because it had not acted in bad faith, and thus the jurisdictional minimum was not met. In rejecting that argument, Judge Sprizzo held:

> [S]ince all of the defendant's arguments involving bad faith and consequential damages cannot be resolved without addressing the merits of these defenses, these allegations cannot be a basis for a conclusion that a motion to dismiss for lack of the jurisdictional amount should be granted. This is especially true since "even where the allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted."

773 F. Supp. at 657 (quoting, Zacharia v. Harbor Island Spa, Inc., 684 F.2d 199, 202 (2d Cir. 1982). Defendant has done even less here, not even offering any reason why plaintiff might not be entitled to consequential damages.

## CONCLUSION

Defendant's motion to dismiss is denied. The case is returned to Magistrate Judge Bloom to conduct pretrial proceedings.

The Clerk of the Court is directed to mail a copy of this Memorandum Decision and Order to plaintiff *pro se*.

**SO ORDERED.**

/Signed by Judge Brian M. Cogan/

U.S.D.J.

Dated: Brooklyn, New York
January 26, 2010